UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| KIMBERLY A. BRACEY, | ) |
| Plaintiff, | ) ) ) |
| v. | ) No. 3:08-1030 ) Judge Echols |
| DEVELOPMENTAL LEARNING CENTER, INC., | ) ) ) ) |
| Defendant. | ) ) |

## MEMORANDUM

Defendant Developmental Learning Center, Inc. ("DLC") filed a Motion For Summary Adjudication (Docket Entry No. 24), to which Plaintiff Kimberly A. Bracey ("Plaintiff") filed a response in opposition (Docket Entry No. 30), and DLC filed a reply (Docket Entry No. 33). DLC moves for summary judgment only on Plaintiff's claim for failure to accommodate brought under the Americans With Disabilities Act of 1990 ("ADA"), 42 U.S.C. § 12101, *et seq.*, the Tennessee Disability Act ("TDA"), Tenn. Code Ann. § 8-50-103, and the Tennessee Human Rights Act ("THRA"), Tenn. Code Ann. 4-21-101, *et seq.* DLC contends that Plaintiff's accommodation claim is time-barred because the events pertaining to that claim occurred in 2005 and Plaintiff did not file an administrative charge of discrimination on the federal ADA claim or file suit on the state-law claims until February 2008.

In addition to the failure to accommodate claim brought under the federal and state statutes, Plaintiff also asserted in her First Amended Complaint a claim for hostile work environment based on her disability or perceived disability. This claim is based on the alleged conduct of Plaintiff's co-worker, Rodger Roach, and Plaintiff's interactions with Dr. Renard Eichler, her supervisor, about Roach's conduct. The hostile work environment claim is not included in DLC's pending motion for

1

summary judgment, even though Plaintiff devotes the greater portion of her legal memorandum to addressing the hostile work environment claim. (Docket Entry No. 30, Plaintiff's Memorandum at 3-9, 12-18.) Plaintiff devotes only two pages of argument to her accommodation claim. (Id. at 10-12.)

## I. FACTS

DLC was a tax-exempt day and residential treatment center for troubled children and youth located in Nashville, Tennessee. (Docket Entry No. 27, Eichler Decl. ¶ 2.) DLC ceased operations on April 27, 2009 due to financial problems caused primarily by the nationwide recession. (Id. ¶ 5.)

Plaintiff is now approximately 38 years old. She began her employment with DLC in October 2001 as an administrative assistant to the executive director, Dr. Renald Eichler. Shortly thereafter, Plaintiff's title was changed to executive assistant to Dr. Eichler. Plaintiff held the same position until September 2005, when she was promoted to operations manager. In the new position Plaintiff handled human relations matters for DLC, including payroll.

In 1999 Plaintiff was involved in an automobile accident which caused her to experience back problems. Plaintiff's back condition steadily deteriorated in the several years after the vehicle accident, resulting in a back surgery on July 25, 2005. DLC granted Plaintiff an extended leave so that she could have the back surgery and recover from it. (Docket Entry No. 28-3, Employer Response to Employee Request for Family or Medical Leave.)

Plaintiff's orthopedic surgeon, Dr. Brett Babat, released Plaintiff to return to work on light duty on August 29, 2005. In a written statement that Plaintiff presented to DLC, Dr. Babat indicated that Plaintiff was precluded from lifting more than five (5) pounds and she should work "½ days for 2 weeks; then after 2 weeks may work full days." (Docket Entry No. 28-4.) Other than Dr. Babat's written note, Plaintiff did not present DLC with any other written statements concerning work

2

restrictions (Docket Entry No. 28-2, Bracey Depo. at 166); however, plaintiff's treating physicians also placed lifting, reaching, sitting and standing restrictions on Plaintiff following her July 2005 surgery for other medical issues such as degenerative disk disease and fibromyalgia. Plaintiff verbally relayed her physical restrictions to Dr. Eichler when she returned to work following her back surgery. (Id. at 161-167, 169; Docket Entry No. 28-1, Bracey Depo. at 72-75.)

Dr. Eichler instructed Plaintiff to ask another employee, Rodger Roach, to help Plaintiff with any heavy lifting that she could not do by herself. Plaintiff admitted in her deposition that the other physical restrictions placed on her by her doctors, related to sitting, standing, and bending, were "not something that Dr. Eichler could police. That was something that I had to manage on my own, which I did." Plaintiff also testified that she did not need Dr. Eichler to make an accommodation for something she knew how to accommodate herself. (Docket Entry No. 28-2, Bracey Depo. at 172-175.)

The main issue for Plaintiff was that she was not allowed to work half days during the two weeks after she first returned to work, as Dr. Babat had instructed, because Dr. Eichler or other administrators presented her with work that needed to be done before she could leave for the day and she ended up working more than a half day to finish the work. Also, Plaintiff felt she was not allowed to take a sufficient number of breaks away from her desk because as soon as she would leave her office, she would be contacted by others asking her to return to her desk. (Id. at 150-155, 161, 176; Docket Entry No. 28-1, Bracey Depo. at 76, 80-82.) Plaintiff submits that she tried to talk with Dr. Eichler about these matters, showing him that she was working 15- or 16-hour days. She also pointed out to Dr. Eichler that an accommodation had been made for Willie Godfrey, another DLC employee, because he had knee issues, but no similar accommodation was made for her. (Docket Entry No. 28-2, Bracey Depo. at 176.)

3

Plaintiff filed an EEOC Charge of Discrimination based on disability and retaliation on February 25, 2008. In the charge, Plaintiff claimed that the earliest date of discrimination was July 25, 2005 and the latest was January 17, 2008. She stated, among other things: "Since I returned from a medical LOA [leave of absence] in 2005, I have continually been harassed by management and co-workers about my medical condition. I have requested reasonable accommodations at my personal physician's directions. These requests have either been denied or not followed completely." (Docket Entry No. 28-5.)

Plaintiff filed her original Complaint in Davidson County Chancery Court on February 8, 2008. Apparently after receiving a right-to-sue letter from the EEOC, Plaintiff filed a First Amended Complaint adding a federal ADA claim and thereafter, DLC removed the action to this Court. The only paragraph in Plaintiff's First Amended Complaint that addresses the accommodation claim states: "Plaintiff asked for an accommodation in that she be allowed to work less hours after her surgery. She was supposed to work ½ days but, instead, ended up having to work 5 or 6 hours per day." (Docket Entry No. 1-1, ¶ 10.)

In response to DLC's motion for summary judgment, Plaintiff claims that she had several physical and mental difficulties that affected her ability to work and care for herself. (Docket Entry No. 29, Plaintiff's Response to Defendant's Statement of Facts ¶ 1; Docket Entry No. 30, Plaintiff's Memorandum.) However, Plaintiff has not assisted the Court in understanding *when* all of her physical and mental difficulties occurred in relation to actions taken by DLC. Plaintiff did not provide to the Court many of the deposition transcript pages on which she relies to make her points, (31-32, 69-70, 182, 190-191), and some of the transcript pages she cites do not include the information she says can be found on those pages (168, 177, 184). Plaintiff provides documentation that she was awarded Social Security Disability Insurance benefits (Docket Entry No. 30-1, Bracey

4

Ex. No. 1) , but that award was made on August 30, 2008, after Plaintiff filed her original Complaint and the EEOC charge. The document Plaintiff provides to substantiate all of her physical and mental conditions was formulated in connection with her Social Security disability benefits application and expressly stated: "My condition first interfered with my ability to work on 11/18/07, 11/30/07, 12/5/07." (Docket Entry No. 30-1, Bracey Ex. No. 55 at 2.) The document also clearly indicates that Plaintiff did not experience mental difficulties, including a "nervous breakdown" and severe anxiety and panic attacks, until November 7, 2007. (Id.) Plaintiff claimed she had been unable to work after November 30, 2007.[1] (Id.) The lengthy letters Plaintiff wrote to Dr. Eichler outlining her difficulties with Rodger Roach are dated November 8 and 29, 2007. (Docket Entry No. 30-1, Bracey Ex. Nos. 11 & 12.)

## II. STANDARD OF REVIEW

A party may obtain summary judgment if the evidence establishes there are not any genuine issues of material fact for trial and the moving party is entitled to judgment as a matter of law. See Fed. R. Civ. P. 56(c); Covington v. Knox County School Sys., 205 F.3d 912, 914 (6th Cir. 2000). The moving party bears the initial burden of satisfying the court that the standards of Rule 56 have been met. See Martin v. Kelley, 803 F.2d 236, 239 n.4 (6th Cir. 1986). The ultimate question to be addressed is whether there exists any genuine issue of material fact that is disputed. See Anderson v. Liberty Lobby, 477 U.S. 242, 248 (1986); Covington, 205 F.3d at 914 (citing Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986)). If so, summary judgment is inappropriate.

To defeat a properly supported motion for summary judgment, the nonmoving party must set forth specific facts showing that there is a genuine issue of material fact for trial. If the party

---

[1] DLC alleges that Plaintiff took an extended leave of absence from DLC until it ceased operations in April 2009. (Docket Entry No. 25, DLC's Memorandum at 5.)

5

does not so respond, summary judgment will be entered if appropriate. Fed. R. Civ. P. 56(e). The nonmoving party's burden of providing specific facts demonstrating that there remains a genuine issue of material fact for trial is triggered once the moving party shows an absence of evidence to support the nonmoving party's case. Celotex, 477 U.S. at 325. A genuine issue exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson, 477 U.S. at 248. In ruling on a motion for summary judgment, the Court must construe the evidence in the light most favorable to the nonmoving party, drawing all justifiable inferences in its favor. See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).

### III. ANALYSIS

The Court concludes that Plaintiff's ADA accommodation claim is time-barred. "[A] claimant who wishes to bring a lawsuit claiming a violation of the ADA must file a charge of discrimination with the EEOC within 300 days of the alleged discrimination." Parry v. Mohawk Motors of Michigan, Inc., 236 F.3d 299, 309 (6th Cir. 2000). In this case, Plaintiff filed a charge of discrimination on February 25, 2008. Thus, Plaintiff cannot recover for any alleged discrete acts of disability discrimination that occurred before May 1, 2007, more than 300 days before the filing of the charge. National R.R. Passenger Corp. v. Morgan, 536 U.S. 101, 111-114 (2002).

As outlined above, Plaintiff alleged in her First Amended Complaint filed on October 8, 2008 that she asked for an accommodation to work fewer hours after her back surgery. (Docket Entry No. 1-1 ¶ 1.) DLC presented evidence establishing that, when Plaintiff returned to work after back surgery on August 29, 2005, she presented DLC with a note from Dr. Babat stating that Plaintiff should work half days for a period of two weeks and then Plaintiff could work full days. Plaintiff testified that Dr. Babat placed other restrictions on her as well and she conveyed them verbally to Dr. Eichler. Even taking as true Plaintiff's testimony that Dr. Eichler failed to accommodate her

6

half-day schedule and other restrictions, this two-week restriction period as imposed by Dr. Babat occurred in September 2005. Nearly two years and six months passed before Plaintiff filed a charge of discrimination complaining about this lack of accommodation. This is far outside the 300-day time period within which Plaintiff was required to file an ADA charge, and her legal claim for lack of accommodation in this time period cannot lead to any recovery in this suit. See Morgan, 536 U.S. at 111-114.

Plaintiff tries to avoid this result by expanding dramatically on the pleading contained in her First Amended Complaint and by pointing to her EEOC charge, which alleged she had been "continually" denied reasonable accommodations. The EEOC charge is simply that–a charge, and it is not admissible evidence that bolsters Plaintiff's case when she is faced with a summary judgment motion. While the continuing violation doctrine applies in the context of a hostile work environment claim to make admissible all evidence concerning the work environment spanning months or even years if acts constituting the hostile work environment occurred within the 300-day window, the theory does not permit recovery for discrete acts of discrimination that occurred outside the statutory period. Id. at 113; Bell v. Ohio State Univ., 351 F.3d 240, 247 (6th Cir. 2003).

Plaintiff presents medical records from the physicians who treated her for physical and mental conditions, but those documents primarily address medical complaints made by the Plaintiff in the periods April and May 2006, September 2006 to February 2007, and October 2007 to February 2008 (Docket Entry Nos. 30-4, 30-5, 30-6, 30-7, 30-8, 30-9), long after the July 2005 back surgery and Plaintiff's two-week restriction to half-days in September 2005. On December 20, 2007, Plaintiff's back surgeon, Dr. Babat, wrote that Plaintiff "has a lot of back pain. There is not a structural reason that I can identify in her spine for her pain. It may well be stress related." (Docket Entry No. 30-4 at 5.)

7

Even taking as true for purposes of summary judgment that the medical records show Plaintiff suffered from various medical conditions, that various medications were prescribed to Plaintiff for pain and emotional ailments, and that Plaintiff may have had certain physical restrictions from late 2005 through the filing of her original Complaint in February 2008, Plaintiff did not produce any specific evidence after September 2005 that she asked Dr. Eichler at DLC to accommodate her conditions and he refused to do so. Thus, Plaintiff has not created a genuine issue of material fact for trial that DLC committed any discrete act of failure to accommodate Plaintiff within 300 days before Plaintiff filed her administrative charge, that is, between May 1, 2007 and February 25, 2008. Plaintiff also has not produced any evidence or argument that the Court should consider tolling the 300-day period on the basis of waiver or estoppel or for other equitable reasons. See Williams v. Northwest Airlines, Inc., 53 Fed. Appx. 350, 352 (6th Cir. 2002).

The state-law accommodation claim fails for a similar reason. The THRA and the TDA require that a state disability discrimination lawsuit be filed within one (1) year of the discriminatory act that forms the basis of the Complaint. Tenn. Code Ann. §§ 4-21-311(d), 8-50-103. As already explained, Plaintiff plead and testified about DLC's failure to accommodate her following her back surgery by providing a true half-day work schedule for two weeks in September 2005 and with sufficient breaks away from her desk. Taking as true for the purpose of summary judgment that DLC failed to make proper accommodations, Plaintiff was required to file suit no later than September 2006. Instead, she initially filed suit on the state-law claims on February 8, 2008, much longer than one year after the alleged failure to accommodate. Plaintiff did not produce any evidence to create a genuine issue of material fact for trial that DLC committed any discrete act of failure to accommodate Plaintiff's back disability within one year before she filed suit on February 8, 2008.

8

## IV. CONCLUSION

For all of the reasons stated, the Court concludes that Plaintiff's failure to accommodate claim, whether brought under the ADA, the THRA, or the TDA, is time-barred and she cannot recover on that claim. Defendant's Motion For Summary Adjudication (Docket Entry No. 24) will be granted. The case will be returned to the Magistrate Judge for further case management on the remaining hostile work environment claim.

An appropriate Order will be entered.

ROBERT L. ECHOLS
UNITED STATES DISTRICT JUDGE